IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

THE UNITED STATES OF AMERICA )
and THE STATE OF TENNESSEE, )
                              )
        Plaintiffs,           )
                              )
        v.                    )        Case No. _____
                              )
KNOXVILLE UTILITIES BOARD,    )
                              )
        Defendant.            )

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys, acting at the request of the Administrator of the United

States Environmental Protection Agency ("EPA"), and the State of Tennessee, by authority of the

Attorney General of the State of Tennessee and through its undersigned attorneys, acting at the

request of the Tennessee Department of Environment and Conservation ("TDEC"), file this

complaint and allege as follows:

## NATURE OF ACTION

1.      This is a civil action for penalties and injunctive relief brought under Section 309

of the Clean Water Act ("the Act"), 33 U.S.C. § 1319, against the Knoxville Utilities Board

("KUB") for discharges of pollutants in violation of Section 301 of the Act, 33 U.S.C. § 1311,

from at least January 1998 through the date this Complaint is filed, including discharges of

pollutants from unpermitted point sources, and for violations of effluent limitations and other

1

conditions established in the National Pollutant Discharge Elimination System ("NPDES") permits issued to KUB by TDEC pursuant to its EPA-approved permit program under Section 402 of the Act, 33 U.S.C. § 1342. The State of Tennessee ("State") has joined as a plaintiff to this action pursuant to Section 309(e) of the Act, 33 U.S.C. § 1319(e). The State of Tennessee reserves the right to assert any immunities or defenses to liability under that provision.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action pursuant to Section 309(b) of the Act, 33 U.S.C. §§ 1319(b), and 28 U.S.C. §§ 1331, 1345 and 1355. This Court has subject matter jurisdiction over the claims of the State of Tennessee pursuant to 28 U.S.C. § 1367 and principles of supplemental jurisdiction, because the State's claims are so related to the United States' claims that they form part of the same case or controversy.

3.     The United States has authority to bring this action on behalf of the Administrator of EPA ("Administrator") under Section 506 of the Act, 33 U.S.C. § 1366. The State of Tennessee has authority to bring this action on behalf of TDEC in accordance with Tenn. Code Ann. § 8-6-109.

4.     Venue is proper in the Eastern District of Tennessee pursuant to 28 U.S.C. §§ 1391(b) and 1395, because it is the judicial district in which KUB is located and in which the alleged violations occurred.

## DEFENDANT KNOXVILLE UTILITIES BOARD

5.     Defendant KUB is a governmental entity created by the charter of the City of Knoxville, Tennessee ("City"). KUB owns and operates four wastewater treatment plants, along with approximately 1,300 miles of collection and transmission systems, pursuant to the terms of

2

the four NPDES permits issued under Section 402(b) of the Act, 33 U.S.C. § 1342. Such

facilities are located throughout the City of Knoxville and Knox County, and surrounding areas.

## CLEAN WATER ACT AND WATER QUALITY CONTROL ACT STATUTORY REQUIREMENTS

6.       Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the "discharge of

pollutants" by any person into waters of the United States except in compliance with that

Section, including, where applicable, an NPDES permit issued pursuant to Section 402 of the

Act, 33 U.S.C. § 1342. Similarly, Section 108(b) of Tennessee's Water Quality Control Act,

Tenn. Code Ann. § 69-3-108(b), prohibits the discharge of pollutants to waters of the State, or to

"a location from which it is likely that the discharged substance will move into waters" without a

valid permit, and Tenn. Code Ann. § 69-3-114(b) provides that it is illegal to act "in a manner or

degree" that is violative of any permit provision. Further, Tenn. Code Ann. § 69-3-114(a)

prohibits the discharge or placement of substances in any location where the substances, by

themselves, or in combination with others, could cause a condition of pollution to the waters of

the State, as defined in Tenn. Code Ann. § 69-3-103(22).

7.       Section 402(a) of the Act, 33 U.S.C. § 1342(a), provides that the permit-issuing

authority may issue an NPDES permit which authorizes the discharge of any pollutant, but only

in compliance with the applicable requirements of Section 301 of the Act, 33 U.S.C. § 1311, and

such other conditions as the Administrator determines are necessary to carry out the provisions of

the Act.

3

8.      Section 402(b) of the Act, 33 U.S.C. § 1342(b), provides that EPA may approve a

state NPDES permitting program within its jurisdiction. The State, through TDEC, is authorized

to issue NPDES permits in Tennessee, and does so in accordance with its Water Quality Control

Act, Tenn. Code Ann. §§ 69-3-105(h) and 69-3-108(e), and Tenn. Comp. R. & Reg., chs. 1200-

4-1-.05, 1200-4-3, 1200-4-5, 1200-4-10.

9.      Section 308 of the Act, 33 U.S.C. § 1318, authorizes EPA to require inspection

and monitoring to determine compliance with the Act and NPDES permits, through, *inter alia*,

Discharge Monitoring Reports ("DMRs") and quality assurance requirements. Data submitted on

DMRs must accurately reflect the pollutants in, and toxicity of, the discharges of the permittee.

10.     Section 309(b) of the Act, 33 U.S.C. § 1319(b), authorizes the Administrator to

commence a civil action for appropriate relief, including a permanent or temporary injunction,

when any person is in violation of, inter alia, Section 301 of the Act, 33 U.S.C. § 1311, or any

permit condition or limitation in an NPDES permit issued pursuant to Section 402 of the Act, 33

U.S.C. 1342.

11.     Section 309(d) of the Act, 33 U.S.C. § 1319(d), provides that any person who

violates Section 301 of the Act, 33 U.S.C. § 1311, or violates any permit condition or limitation

in a NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342, shall be subject

to a civil penalty not to exceed $27,500 per day for each violation which takes place after January

30, 1997, but before March 15, 2004; and $32,500 per day for each violation which takes place

on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of

1990 (28 U.S.C. § 2461 note; Pub. L. 101-410, enacted October 5, 1990; 104 Stat. 890), as

amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note; Pub. L. 104-

4

134, enacted April 26, 1996; 110 Stat. 1321).

12. Section 504(a) of the Act, 33 U.S.C. § 1364(a), provides that "[n]otwithstanding any other provisions of this chapter, the Administrator upon receipt of evidence that a pollution source or combination of sources is presenting an imminent and substantial endangerment to the health of persons or to the welfare of persons where such endangerment is to the livelihood of such persons, such as inability to market shellfish, may bring suit on behalf of the United States in the appropriate district court to immediately restrain any person causing or contributing to the alleged pollution to stop the discharge of pollutants causing or contributing to such pollution or to take such other action as may be necessary."

## GENERAL ALLEGATIONS

13. At all times relevant herein, KUB has owned and operated wastewater treatment plants, and their associated collection and transmissions systems ("WWTPs"), which receive and treat wastewater from residential, commercial, and industrial sources within Knoxville, Knox County, and surrounding areas. The collection and transmission systems for the WWTPs include, *inter alia*, gravity sewer lines, force mains, pump stations and manholes.

14. At all times relevant herein, KUB was a person, within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5).

15. KUB's WWTPs are "treatment works" within the meaning of Section 212(2) of the Act, 33 U.S.C. § 1292(2). The WWTPs include point sources within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14).

16. At all times relevant herein, KUB has "discharged pollutants" from its treatment works within the meaning of Sections 502(6) and (12) of the Act, 33 U.S.C. §§ 1362(6) and (12),

5

and Tenn. Code Ann. §§ 69-3-103(9), (18) and (21), from "point sources" within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14), and Tenn. Code Ann. § 69-3-103(29), into the Tennessee and Holston Rivers, and their system of tributaries and river basins.

17.     The Tennessee and Holston Rivers, and their system of tributaries and river basins, are "navigable waters" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2. These same water bodies also constitute "waters [of the State]," as defined under Tenn. Code Ann. § 69-3-103(33). Pursuant to Tenn. Code Ann. § 69-3-105(a), all waters of the State have been classified by the Tennessee Water Quality Control Board for suitable uses, in accordance with Tenn. Comp. R. & Reg., ch. 1200-4-4.

18.     Pursuant to Section 402(a) of the Act, 33 U.S.C. § 1342(a), and Tenn. Code Ann. § 69-3-108(e), TDEC issued KUB NPDES permits for the following four WWTPs:

a.     Kuwahee WWTP was issued Permit Number TN0023582, effective October 1, 1994. The permit was reissued on June 30, 2000, and again on April 30, 2004. KUB appealed the reissued permits in part prior to the effective dates of the reissued permits. Because KUB's appeal has not yet been resolved, the 1994 permit controls with respect to those matters that were appealed.

b.     Fourth Creek WWTP was issued Permit Number TN0023574, effective October 1, 1994. The permit was reissued on June 30, 2000, and again on April 30, 2004. KUB appealed the reissued permits in part prior to the effective dates of the reissued permits. Because KUB's appeal has not yet been resolved, the 1994 permit controls with respect to those matters that were appealed.

6

c.      Loves Creek WWTP was issued Permit Number TN0021822, effective October 1, 1994. The permit was reissued on June 30, 2000, and again on April 30, 2004. KUB appealed the reissued permits in part prior to the effective dates of the reissued permits. For those portions of the reissued permits that were appealed, the 1994 permit remains effective. Because KUB's appeal has not yet been resolved, the 1994 permit controls with respect to those matters that were appealed.

d.      East Bridge WWTP was issued Permit Number TN0061743, effective October 1, 1994. The permit was reissued on June 30, 2000, and again on April 30, 2004. KUB appealed the reissued permits in part prior to the effective dates of the reissued permits. Because KUB's appeal has not yet been resolved, the 1994 permit controls with respect to those matters that were appealed.

19.      At all relevant times herein, KUB's NPDES permits have authorized KUB to discharge pollutants from specified point sources within its WWTPs to the Tennessee and Holston Rivers, subject to certain limitations and conditions set forth in the NPDES permits.

20.      The NPDES permits establish certain limitations on, *inter alia*, the mass and concentration of pollutants KUB may discharge from its WWTPs during a given period. *See* Permits at Part I.A. The NPDES permits also require KUB to monitor its discharges and submit periodic DMRs to TDEC. *See* Permits at Part I.B. and I.D.

21.      The NPDES permits issued in 1994 to KUB prohibit bypasses, which are defined in these permits as the discharge of wastes from any portion of the collection or treatment system other than through permitted outfalls. *See* 1994 Permits at Part II.C.3.

7

22.     The NPDES permits issued to KUB in 2000 and 2004 prohibit overflows, which are defined as the discharge of wastes from any portion of the collection, transmission, or treatment system other than through permitted outfalls. *See* 2000 and 2004 Permits at Part II.C.3.

23.     The 1994, 2000 and 2004 NPDES permits require KUB at all times to properly operate and maintain in good working order all facilities and systems (and related appurtenances) for collection and treatment installed or used by KUB to achieve compliance with the terms and conditions of the permit. *See* 1994, 2000 and 2004 Permits Part II.A.4.

24.     The 1994, 2000 and 2004 NPDES permits require KUB to "conduct its wastewater treatment and/or discharge activities in a manner such that public or private nuisances or health hazards will not be created." *See* 1994, 2000 and 2004 Permits Part II.D.1.

25.     The 1994, 2000 and 2004 NPDES permits require KUB to take representative samples of its influent and effluent, and to report its monitoring accurately. *See* 1994, 2000 and 2004 Permits Parts I.B.1 and I.D.

26.     The 1994 permits issued to KUB define "Diversion" as the intentional rerouting of wastewater within a treatment facility away from a biological portion of the treatment facility." 1994 NPDES Permits at Part II.C.6.a. The 1994 permits specify that Diversion is "permissible only when necessary to protect the active biomass from a wash-out due to peak flow events and when this action does not cause effluent limitations to be exceeded." *Id.* at Part II.C.6.b. Because KUB's appeal of certain provisions contained in the 2000 and 2004 permits has not yet been resolved, the provision regarding Diversion in the 1994 Permit remains operative.

8

## FIRST CLAIM FOR RELIEF
## UNPERMITTED DISCHARGES

27.     Paragraphs 1 through 26 are realleged and incorporated herein by reference.

28.     On numerous occasions between January 1998 and the date this Complaint is filed, KUB experienced sanitary sewer overflows, or discharges of untreated wastewater containing pollutants from point sources within its WWTPs, including the collection and transmission systems, that were not identified in its NPDES permits as authorized outfalls ("SSOs"). These SSOs include leaks, overflows, defects, backups, and surcharged manholes. These SSOs were not permitted or otherwise authorized by the Act.

29.     Each day of each unpermitted discharge by KUB described in paragraph 28 is a separate violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), and Tenn. Code Ann. §§ 69-3-108(b), 69-3-114(a) and (b).

30.     Unless restrained by an order of the Court, KUB will continue to discharge wastewater containing pollutants, from point sources that are not identified in its NPDES permits as authorized outfalls, including the collection and transmission systems, without a permit or other authorization in violation of the Act and the Tennessee Water Quality Control Act.

## SECOND CLAIM FOR RELIEF
## MANAGEMENT, OPERATION AND MAINTENANCE VIOLATIONS

31.     Paragraphs 1 through 30 are realleged and incorporated herein by reference.

32.     Many of the SSOs alleged in paragraph 28 resulted, in whole or in part, from KUB's failure to properly manage, operate and maintain its WWTPs, including its collection and treatment systems, and the failure to have on-line and in operation those systems of treatment and control necessary to achieve compliance with the NPDES permits. Proper management,

9

operation and maintenance would ensure that KUB can transport sewage and pollutants through its collection and transmission systems without SSOs that result from causes other than high flows.

33. KUB violated the Operation and Maintenance ("O&M") provisions of its NPDES permits (Part II.A.4) on each occasion of an SSO that resulted from a cause other than high flows between January 1998 and the date this Complaint is filed.

34. Each day of each violation of Part II.A.4 of the NPDES permits is a separate violation.

35. Unless restrained by an order of the Court, KUB will continue to violate Part II.A.4 of the NPDES permits.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF PROHIBITION AGAINST NUISANCE AND HEALTH HAZARDS

36. Paragraphs 1 through 35 are realleged and incorporated herein by reference.

37. Many of the SSOs described above in paragraph 28, created a public or private nuisance and/or a health hazard because they occurred in parks, streets, and other places where people and their pets come into contact with untreated wastewater that contains numerous pollutants.

38. On each occasion described in paragraph 37, between January 1998 and the date this Complaint is filed, KUB violated the provision of its NPDES permits (Part II.D.1) that states, "[n]otwithstanding this Permit, it shall be the responsibility of this permittee to conduct its wastewater treatment and/or discharge activities in a manner such that public or private nuisances or health hazards will not be created."

10

39.     Each day of each violation of Part II.D.1 of the NPDES permits is a separate

violation.

40.     Unless restrained by an order of the Court, KUB will continue to violate Part

II.D.1 of the NPDES permits.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF PROHIBITIONS AGAINST
## IMPROPER BYPASS AND/OR OVERFLOW

41.     Paragraphs 1 through 40 are realleged and incorporated herein by reference.

42.     The SSOs described in paragraph 28, which occurred between January 1998 and

the date this Complaint is filed, constituted improper bypasses under Part II.C.3 of its 1994

NPDES permits prohibiting improper bypasses.  In addition to or in the alternative, the SSOs

described in paragraph 28, which occurred between January 1998 and the date this Complaint is

filed, constituted prohibited overflows under Part II.C.3 of its 2000 and 2004 NPDES permits

prohibiting overflows.

43.     Each day of each violation of Part II.C.3 of the 1994 Permits or, in the alternative,

Part II.C.3. of the 2000 and 2004 NPDES permits is a separate violation.

44.     Unless restrained by an order of the Court, KUB will continue to violate these

conditions of its NPDES permits.

## FIFTH CLAIM FOR RELIEF
## DISCHARGES IN VIOLATION OF EFFLUENT LIMITATIONS

45.     Paragraphs 1 through 44 are realleged and incorporated herein by reference.

46      On numerous occasions between January 1998 and the date this Complaint is

filed, set forth more specifically in paragraphs 49 through 52, KUB discharged pollutants from

11

outfalls authorized by the NPDES permits in violation of the effluent limitations and other conditions established in the NPDES permits. These outfalls are point sources. The discharges flowed into the Tennessee and Holston Rivers.

47.     Each day of each discharge of each pollutant by KUB in violation of the conditions and/or effluent limitations established in the NPDES permits is a separate violation of the permits, Section 301 of the Act, 33 U.S.C. § 1311, and Tenn. Code Ann. §§ 69-3-108(b), 69-3-114(a) and (b).

48.     Unless restrained by an order of the Court, KUB will continue to violate the effluent limitations and other conditions of its NPDES permits, the Act, and the Tennessee Water Quality Control Act.

**KUWAHEE WWTP**

49.     More specifically, from at least August 31, 1998, through at least December 31, 2003, KUB discharged pollutants in violation of the effluent limitations and conditions of its NPDES permit TN0023582, including but not limited to: the daily maximum limitations for ammonia, biochemical oxygen demand ("BOD5"), fecal coliform, lead, phenols, settleable solids, total suspended solids ("TSS"); the daily miminum percent removal for TSS; and the weekly average limitation for TSS. KUB's discharges also failed the whole effluent toxicity ("WET") test at least once during this period.

**FOURTH CREEK WWTP**

50.     More specifically, from at least March 31, 1999, through at least December 31, 2003, KUB discharged pollutants in violation of the effluent limitations and conditions of its NPDES permit TN0023574, including but not limited to: daily maximum limitations for BOD5,

12

fecal coliform, phenols, settleable solids, toluene and TSS; the daily minimum percent removal

limits for TSS and BOD5; the maximum weekly average limitation for TSS; and the monthly

average percent removal requirements for BOD5 and TSS.

## LOVES CREEK WWTP

51.    More specifically, from at least December 31, 1998, through December 31, 2003,

KUB discharged pollutants in violation of the effluent limitations and conditions of its NPDES

permit TN0021822, including but not limited to: the daily maximum limitations for ammonia,

settleable solids, total residual chlorine ("TRC") and TSS; the daily minimum percent removal

requirements for BOD5 and TSS; and the monthly average limitation for TSS percent removal.

KUB's discharges also failed the whole effluent toxicity ("WET") test at least twice during this

period.

## EAST BRIDGE WWTP

52.    More specifically, from at least October 31, 1998, through December 31, 2003,

KUB discharged pollutants in violation of the effluent limitations and conditions of its NPDES

permit TN0061743, including but not limited to: daily maximum limitations for ammonia, fecal

coliform, dissolved oxygen, TSS, settleable solids, and TRC; the weekly average limitation for

ammonia; and the monthly average limitations for fecal coliform and TSS.

## SIXTH CLAIM FOR RELIEF
## UNPERMITTED DIVERSIONS

53.    Paragraphs 1 through 52 are realleged and incorporated herein by reference.

54.    On numerous occasions between January 1998 and the date this Complaint is

filed, KUB has diverted wastewater around secondary treatment units at its Kuwahee and Fourth

13

Creek WWTPs when such diversions did not occur during peak flow events, were not necessary to prevent a wash-out, and/or caused KUB to violate effluent limitations, in violation of Part II.C.6.b. of the 1994 NPDES permits for those facilities.

55.     Each day of each unpermitted diversion described in paragraph 54 is a separate violation of Part II.C.6.b. of KUB's 1994 NPDES permits.

56.     Unless restrained by an order of the Court, KUB will continue to engage in diversions that are prohibited by Part II.C.6.b. of its 1994 NPDES permits.

## SEVENTH CLAIM FOR RELIEF
## EMERGENCY POWERS (SECTION 504)

57.     Paragraphs 1 through 56 are realleged and incorporated herein by reference.

58.     On numerous occasions between January 1998 and the date this Complaint is filed, untreated sewage from KUB's treatment works' sewer systems has been released onto property, including public parks, and into buildings, including homes, in locations where persons have or may have come into contact with such sewage.

59.     The releases of untreated sewage described in paragraph 28 are "pollution," as that term is defined in Section 501(19) of the Act, 33 U.S.C. § 1362(19).

60.     The releases of untreated sewage described in paragraph 28 may continue in the future.

61.     KUB and its treatment works' sewer systems are "pollution sources" within the meaning of Section 504(a) of the Act, 33 U.S.C. § 1364(a).

62.     The release of untreated sewage can carry bacteria, viruses, parasitic organisms, intestinal worms, and borroughs (inhaled molds and fungi). The diseases these may cause range

14

in severity from mild gastroenteritis (causing stomach cramps and diarrhea) to ailments such as cholera, dysentery, infectious hepatitis, and severe gastroenteritis. KUB's release of untreated sewage, therefore, is presenting an "imminent and substantial endangerment to the health of persons" who may come into contact with it.

63.    The releases of untreated sewage described in paragraph 28 and the threat that these releases may continue in the future is presenting an imminent and substantial endangerment to the health of persons, unless abated through appropriate measures.

**EIGHTH CLAIM FOR RELIEF**
**REPORTING VIOLATIONS**

64.    Paragraphs 1 through 63 are realleged and incorporated herein by reference.

65.    On numerous occasions between December 1998 and September 2000, KUB violated Part I.D of the NPDES permits, which requires KUB to report accurately to TDEC, by under-reporting the volume of diversions that occurred at its Kuwahee and Fourth Creek WWTPs.

66.    On numerous occasions between June 1999 and June 2003, KUB violated Part I.D. of the NDPES permits issued to KUB for the Fourth Creek WWTP by inaccurately reporting weekly and monthly average loadings of BOD and TSS to the Fourth Creek WWTP, as well as average monthly flow for that plant.

67.    Each day of each violation of the reporting requirements of KUB's NPDES permits described in paragraphs 65 through 66 is a separate violation of the NPDES permits.

15

## NINTH CLAIM FOR RELIEF
## NON-REPRESENTATIVE SAMPLING

68.     Paragraphs 1 through 67 are realleged and incorporated herein by reference.

69.     On numerous occasions between January 1998 and the date this Complaint is filed, KUB violated Part I.B.1. of its NPDES permits, which requires that KUB conduct representative sampling, by monitoring influent wastewater to the Kuwahee WWTP at a point downstream of the introduction of sludge streams from its other WWTPs, thus artificially inflating the influent mass of BOD5 and TSS used to calculate the percentage of BOD5 and TSS removed from wastewater that receives treatment at the Kuwahee WWTP.

70.     On numerous occasions between January 1998 and the date this Complaint is filed, KUB also violated Part I.B.1 of its NPDES permits by taking flow measurements at the Fourth Creek WWTP while it was experiencing "back flow" through the flow meters due to high flow volumes that rendered its flow meters inoperable.

71.     Each day of each violation of the reporting requirements of KUB's NPDES permits described in paragraphs 69 and 70 is a separate violation of the NPDES permits. Unless restrained by an order of the Court, KUB will continue to violate the reporting requirements of its NPDES permits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the State of Tennessee, request that the Court enter judgment on behalf of the United States as follows:

A.     Pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), and to Tenn. Code Ann. §§ 69-3-108(b), 69-3-114(a) and (b), order KUB to undertake a program to achieve

16

permanent and consistent compliance with all terms and conditions of its NPDES permits, the Clean Water Act, the Tennessee Water Quality Control Act, and the regulations promulgated thereunder for all of its WWTPs, including their related collection and transmission systems;

B.     Pursuant to Section 504(a), 33 U.S.C. § 1364(a), order KUB (a) to take measures, such as increasing sewer capacity, improving operation and maintenance and installing backflow prevention devices, to prevent the release of sewage into buildings, yards, and other areas where persons may come into contact with it; (b) when releases do occur, to thoroughly clean up and disinfect the affected property; and (c) to take such other action as may be necessary;

C.     Pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), and to Tenn. Code Ann. §§ 69-3-108(b), 69-3-114(a) and (b), assess civil penalties against KUB of up to $27,500 per day for each day of violation that occurred prior to March 15, 2004, and up to $32,500 per day for each day of violation that occurred on or after March 15, 2004;

D.     Award the United States and the State their costs in the action; and

E.     Grant the United States and the State such other relief as the Court deems appropriate.

17

Respectfully submitted,

_Tom Sansonetti_
THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

HARRY S. MATTICE, JR.
United States Attorney
Eastern District of Tennessee

_Patricia Hurst_
PATRICIA L. HURST
Trial Attorney
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 307-1242 - telephone
(202) 514-2583 - facsimile

_Pamela G. Steele_
PAMELA G. STEELE
TN Bar No. 012509
Assistant United States Attorney
Eastern District of Tennessee
800 Market Street
P.O. Box 872
Knoxville, TN 37901-0872
(865) 545-4167, Ext. 293 - telephone
(865) 545-4792 - facsimile

**ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA**

18

Respectfully submitted,


PAUL G. SUMMERS
Attorney General
State of Tennessee


ELIZABETH P. McCARTER
Senior Counsel
Environmental Division
Office of the Tennessee Attorney General
PO Box 20207
Nashville, TN 37202-0207
(615) 532-2582 - telephone
(615) 741-8724 - facsimile


**ATTORNEYS FOR PLAINTIFF**
**THE STATE OF TENNESSEE**

19

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

UNITED STATES and STATE OF TENNESSEE

**DEFENDANTS**

KNOXVILLE UTILITIES BOARD

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **Knox County**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(C) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Patricia L. Hurst, USDOJ/ENRD/EES, P.O.BOX 7611, WASHINGTON, D.C. 20044-7611 (202) 307-1242

ATTORNEYS (IF KNOWN)

Michael Haynes, Hodges, Doughty & Carson, PLLC, 617 Main Street. Knoxville. TN 37902. (865) 292-2307

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN -X- IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefit | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW(405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☒ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS -Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES IN DIVERSITY.)

§ 309(b) of the Federal Water Pollution Control Act, 33 U.S.C. § 1319 (b), for injunctive relief and civil penalties

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):   JUDGE Hon. James H. Jarvis   DOCKET NUMBER 3:03-CV-497

DATE
12/01/2004

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a) Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V. Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.